IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN ALLEN LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-1279-CV-W-DGK-SSA |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING ALJ'S DECISION

Plaintiff John Allen Love seeks judicial review of the Commissioner's denial of his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has exhausted all administrative remedies, and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

Plaintiff filed his application for SSI on March 6, 2007 alleging that he became disabled as of September 1, 1993 due to bipolar disorder, diabetes, and a back impairment. R. at 9, 99, 119. After independent review of the record, carefully considering the arguments set forth by the parties, the Court finds the Commissioner's decision denying SSI benefits is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are consistent

1

with the Social Security Act, the relevant case law, and the regulations, and whether they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* In making this determination, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence in the record supports the Commissioner's decision, the court may not reverse because substantial evidence in the records supports a contrary result or because the court may have decided the case differently. *Id.*

## Discussion

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. §§ 423(d) and 1382(a)(3)(A). To determine a claimant's eligibility for SSI, the Commissioner employs a five-step evaluation process.[1] *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

In the instant case, the administrative law judge ("ALJ") found Plaintiff's credible impairments limited him to a range of light work including bench assembler, electronic

---

[1] There is a five-step process for determining eligibility. If the fact-finder determines at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue. The applicant bears the burden of showing he is disabled from steps one through four of the process. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Id.* The steps proceed as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, the applicant is not disabled; if not, the inquiry continues. At step two, the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted or is expected to last for a continuous 12-month period. If not, the applicant is not disabled; if so, the inquiry continues. At step three, the Commissioner considers whether the impairment or combination of impairments meets the criteria of any impairment listed in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four, the Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five, the Commissioner considers whether, in light of the applicant's residual functional capacity, age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King*, 564 F.3d at 979 n.2.

assembler, and optical goods assembler. Plaintiff argues: (1) the ALJ erred in finding that Plaintiff did not have a severe mental impairment; (2) the ALJ improperly assessed his residual functional capacity ("RFC"), failing to consider all relevant evidence of record; and (3) the ALJ's reliance on the vocational expert's ("VE") testimony is not supported by substantial evidence on the record.

**A. Substantial evidence on the record supports the ALJ's finding that Plaintiff did not have a severe mental impairment.**

The ALJ found that Love's insulin dependent diabetes was a severe impairment. He also noted that the record contained evidence of depression but that it was not a severe impairment because there was "no evidence of consistent, ongoing treatment and evaluation." R. at 11. Plaintiff argues that this finding is not supported by the record. In particular, Love alleges that the record reveals a "long history of mental health treatment, even before Love applied for disability" (Doc. 9).

The Court finds that substantial evidence supports the ALJ's finding that Love did not have a severe mental impairment. In order to meet the threshold severity requirement at step two, a claimant must show (1) he has an impairment or combination of impairments which (2) significantly limits his physical or mental ability to perform basic work activities[2] without regard to age, education, or work experience. 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the 8th Circuit has observed, "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's

---

[2] Basic work activities include physical functions such as walking, sitting, and lifting; mental functions such as understanding, performing, and remembering simple instructions; using judgment; and dealing with changes in a routine work situation. 20 C.F.R. § 404.1521(b).

finding that a claimant failed to make this showing." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (internal citation omitted).

Plaintiff cites to numerous records, prior to the relevant time period, to support his claim that his mental impairment was severe. Plaintiff notes, for example, that he "previously received SSI as a child for bipolar disorder" and that in May 2003, he was diagnosed with "major depression, recurrent; and learning disability" (Doc. 9, p. 14). However, after evaluating the record as a whole, the ALJ determined that Plaintiff's alleged mental impairments during the relevant period were not severe. In making this determination, the ALJ relied on evidence showing that Plaintiff's symptoms were either controlled by medication or that he refused medical treatment for his alleged limitations. R. at 11.

After Plaintiff applied for SSI in March 2007, he received treatment from Tri-County Mental Health Services in May 2007, June 2007, and October 2007 for reported paranoia and hallucinations. R. at 422-23, 428. The record reveals that he was not taking medication at this time. R. at 382. After receiving and beginning prescription medication in May 2007, Dr. Purohit noted that Plaintiff appeared more alert, oriented, and calmer. R. at 409. Plaintiff also denied hallucinations, and Dr. Purohit noted that his insight and judgment was improving. *Id*. When Plaintiff returned to prison in December 2007, he indicated that his medications were helpful and controlling his symptoms. R. at 792, 795.

If an impairment can be controlled with medication, it is not considered disabling. *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009). Although Plaintiff may have exhibited a severe mental impairment prior to March 2007, substantial evidence of record supports the ALJ's conclusion that Plaintiff showed improvement with medication during the relevant time such that his mental limitations were not disabling.

4

Plaintiff also argues that the ALJ improperly considered his non-compliance with treatment in finding that his mental impairment was not severe. The record is replete with evidence that Plaintiff did not regularly take his prescribed medicines for his mental impairments. R. at 516, 518-24, 526-29, 533-55, 558-75, 577-81, 585-93, 596-602, 605-06. Plaintiff, however, argues that a mentally ill claimant's non-compliance with a medical regime cannot be held against him for purposes of determining disability. *Pate-Fires v. Astrue*, 564 F.3d 935, 945-47(8th Cir. 2009). While the Eighth Circuit in *Pate-Fires* suggested that non-compliance with medication can be justified, it has since clarified its position holding that non-compliance by mentally ill claimants will only be justified when there is some evidence linking the mental illness to the repeated non-compliance. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

Here, the record contains no evidence that Plaintiff's non-compliance is attributable to his mental impairments. In fact, the record shows that Plaintiff understood that his improvement was related to the continued use of prescription medications. R. at 792, 795. Plaintiff's position is further undermined by his admission that he became compliant with his diabetes medication after the consequences of non-compliance were explained to him. (Doc. 14, p. 21). Thus, Plaintiff's ability to understand the consequences of non-compliance and the benefits of compliance make this case distinguishable from *Pate-Fires*.

Plaintiff also argues that the ALJ failed to consider his GAF score of 45-50 in determining that his mental impairment was non-severe. However, no direct comparison can be made between GAF scores and the degree of an individual's work-related limitation for Social Security purposes. The Social Security regulations and the case law do not require an ALJ to determine the extent of an individual's mental impairment based solely on GAF score. In fact,

5

the Commissioner "has declined to endorse the GAF score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

Plaintiff further cites to Dr. Purohit's assessment of Plaintiff as having mild to moderate mental retardation, arguing that the ALJ failed in developing the record regarding Plaintiff's possible borderline intellectual functioning. However, Dr. Purohit never performed any intellectual testing on Plaintiff and rather based his assessment on Plaintiff's self-reports and observation. R. at 423. Additionally, no other doctors have suggested that Plaintiff has any intellectual limitations, and his daily activities, including driving and working to obtain a G.E.D., do not support this finding. R. at 21-23, 33, 158, 170-71, 173, 178-79, 182-85, 187-89, 193, 794. In fact, Plaintiff's argument regarding an intellectual disability ignores the medical opinions of the state agency medical consultants, Elissa Lewis, Ph.D., and Richard Kaspar, Ph.D., who reviewed the record and found on May 2007 and January 2009 respectively that Plaintiff did not have a severe mental impairment. These individuals based their decision on Plaintiff's entire record, including Dr. Purohit's assessment and Plaintiff's GAF score. Finally, when the ALJ asked Plaintiff's attorney if there was any additional information necessary for the record, he did not provide any information regarding Plaintiff's intellectual limitation.

Accordingly, the Court finds the ALJ's determination that Plaintiff's mental impairment is not severe is supported by substantial evidence on the record.

**B. The ALJ properly assessed Plaintiff's RFC.**

Case 4:10-cv-01279-DGK   Document 11   Filed 02/07/12   Page 6 of 10

After reviewing the record as a whole and incorporating all impairments and restrictions that he found credible, the ALJ determined that Plaintiff has the RFC to perform a light range of work as defined in 20 C.F.R. § 416.967(b) with restrictions for sitting and standing for only one hour at a time and no more than six hours in a day. R. at 12. The ALJ further restricted Plaintiff from climbing ladders and scaffolds and working at unprotected heights or in environments with extreme heat or cold. *Id.* Plaintiff argues that the ALJ's determination of his RFC is not based upon all of the relevant evidence, specifically Plaintiff's self-reports concerning the intensity, persistence, and limiting effects of his symptoms. Plaintiff also maintains that the medical record, including evidence that he suffers from PTSD, mild to moderate mental retardation, diabetes, and low blood sugar, supports a more restrictive RFC.

In determining a claimant's RFC, the ALJ must base his decision on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Furthermore, the RFC should take into account only those limitations the ALJ finds credible. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).

The Court finds the ALJ's RFC determination supported by substantial record evidence. The ALJ properly considered Plaintiff's subjective complaints of pain in light of the framework set forth in *Polaski v. Heckler*. 739 F.2d 1320 (8th Cir. 1984) (requiring the ALJ to consider (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5)

7

functional restrictions). In addition, the ALJ properly discounted Plaintiff's allegations of pain because they were inconsistent with the record as a whole, including his non-compliance with prescribed treatment, his refusal to take medication, and his poor work history.

For example, although Plaintiff claims that his refusal to take medication was because of side effects, a review of the record shows that Plaintiff denied side effects from his medication. R. at 389, 409. Additionally, although Plaintiff told his doctor that he did not know how to check his blood sugar levels, the record, and his own testimony at hearing show that he did monitor his own blood levels. R. at 27, 201, 248, 307, 382. Furthermore, Plaintiff has never held a job and has been incarcerated on and off since 1996 for crimes of forgery and stealing. Thus, the ALJ properly took all of these considerations into account in discounting Plaintiff's credibility and determining that he lacked motivation for long-term, permanent employment.

Finally, Plaintiff argues that the ALJ failed to consider his obesity in accordance with Social Security Ruling 02-1p which provides that obesity "remains a medically determinable impairment." However, while SSR 02-1p recognizes the potential severity of obesity, it does not dictate that every obese individual has a severe impairment. In fact, the Eighth Circuit has recognized that obesity may not rise to the level of a severe impairment where doctors decline to impose work-related restrictions because of it. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004). Although Plaintiff's medical records show that Plaintiff was obese, no doctor imposed work-related restrictions on him due to this condition. Furthermore, Dr. Hughes, a state agency medical consultant who reviewed Plaintiff's records, noted Plaintiff's weight and concluded that he did not have a severe physical impairment. Contrary to Dr. Hughes' opinion, the ALJ still limited Plaintiff to a light range of work. As such, the ALJ properly considered and formulated Plaintiff's RFC with his weight in mind.

Thus, the Court upholds the ALJ's determination of Plaintiff's RFC, finding that the ALJ's determination was based on substantial evidence of record and properly included only Plaintiff's credible limitations. *Wildman*, 596 F.3d at 966.

### C. The ALJ properly determined that Plaintiff retained the RFC to perform work as it exists in significant numbers in the national economy.

Plaintiff's final argument is that the hypothetical the ALJ relayed to the vocational expert ("VE") did not accurately depict all of Plaintiff's impairments. In the hypothetical posed to the VE, the ALJ assumed an individual who could: lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for only one hour at a time and for no more than six hours in a work day; and not climb ladders, scaffolds or work at unprotected heights or extreme temperatures of cold or heat. The VE responded that an individual with these limitations could perform jobs such as bench assembler, electronics assembler, or optical goods assembler. The ALJ did not, however, include any limitations based on by Love's mental impairments. When asked by Plaintiff's attorney whether an individual with the ALJ's stated limitations *and* a mental impairment hindering up to 1/3 of his concentration would be able to find work that exists in significant number in the economy, the VE testified that no work would be available. Plaintiff argues that the ALJ's failure to inquire about the effect of Plaintiff's mental impairments is reversible error. *See Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997).

The Court finds this determination without error. As previously discussed, the ALJ properly determined Plaintiff's RFC. He then used that RFC to formulate a hypothetical question to the VE. He thereafter relied on the VE's testimony in finding that Plaintiff could perform work as it exists in the national economy. Thus, because the ALJ properly considered Plaintiff's credibility and incorporated all limitations he found credible in the hypothetical question he posed to the vocational expert, the ALJ properly relied on the vocational expert's

testimony in determining that Plaintiff was not disabled. *Nelson v. Sullivan*, 946 F.2d 1314, 1317 (8th Cir. 1991).

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: February 7, 2012  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT